Barbara E. Cowan (SBN 251942)
**WORKPLACE ADVOCATES**
9431 Haven Avenue, Suite 100
Rancho Cucamonga, CA 91730
Telephone:    (909) 983-4102
Email:         brandi@wpa.law

Attorney for Plaintiff EDWARD BAQUERIZO

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD BAQUERIZO, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>REPUBLIC SERVICES, INC., a corporation; WEST CONTRA COSTA SANITARY LANDFILL, INC., a corporation; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.: 3:24-cv-7673<br><br>COMPLAINT FOR DAMAGES FOR:<br><br>1. RETALIATION IN VIOLATION OF LABOR CODE § 1102.5;<br>2. UNFAIR BUSINESS PRACTICES IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200;<br>3. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY<br><br>DEMAND FOR JURY TRIAL |

1

COMPLAINT FOR DAMAGES

## **INTRODUCTION**

Plaintiff Edward Baquerizo spent decades dedicated to ensuring environmental compliance and protecting public safety at the West Contra Costa Sanitary Landfill (WCCSL). Despite his efforts, when he raised legitimate concerns about his employers' refusal to comply with essential environmental regulations, he was met with retaliation. The employers not only failed to provide the necessary resources for compliance but went so far as to affirmatively instruct Mr. Baquerizo to "balance the risk of non-compliance"—choosing cost-cutting over their legal (and moral) obligations. This reckless disregard for both regulatory requirements and public safety led to Mr. Baquerizo's wrongful termination, all because he stood up to protect the environment and the community. This Complaint seeks to hold these employers accountable for their unlawful actions and the harm caused to Mr. Baquerizo. Accordingly, Plaintiff EDWARD BAQUERIZO ("BAQUERIZO") alleges against Defendants REPUBLIC SERVICES, INC. ("RSI"), WEST CONTRA COSTA SANITARY LANDFILL, INC. ("WCCSL"), and DOES 1 to 25, inclusive, (collectively "DEFENDANTS" or "REPUBLIC") and each of them, as follows, and demands a trial by jury on all matters herein alleged:

## **THE PARTIES**

1.      BAQUERIZO is and, at all relevant times mentioned herein, was an adult individual and a resident of San Rafael, California, County of Marin.

2.      RSI is and, at all relevant times mentioned herein, was a corporation organized under the laws of the State of Arizona, with its principal place of business in Phoenix, Arizona.  It is thus a resident of the State of Arizona.

3.      RSI is, and at all relevant times mentioned herein, a corporation doing business in the city of Richmond, California, County of Contra Costa.

4.      WCCSL is and, at all relevant times mentioned herein, was a corporation organized under the laws of the State of Arizona, with its principal place of business in Phoenix, Arizona.  It is thus a citizen of the State of Arizona.

2

5. WCCSL is and, at all relevant times mentioned herein, was a corporation doing business in the city of Richmond, California, County of Contra Costa.

6. The true names and capacities whether individual, corporate, partner, associate or otherwise of the defendants designated herein as DOES 1 through 25, inclusive, are unknown to BAQUERIZO at this time, and BAQUERIZO therefore sues such defendants by such fictitious names. BAQUERIZO will amend this Complaint to set forth the true names and capacities of the DOE defendants named herein when such has been ascertained. Each of the DOE defendants herein is responsible in whole or in part for the damages alleged herein.

7. At all times mentioned herein, each of the defendants, including all defendants sued under fictitious names, was acting as the agent, employee, or servant of each of the remaining defendants and in doing the acts alleged herein was acting either as an individual or within the course and scope of such agency, employment, or service.

## JURISDICTION AND VENUE

8. Plaintiff BAQUERIZO is a resident and citizen of the State of California.

9. Defendants RSI and WCCSL are residents and citizens of the State of Arizona.

10. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332, as complete diversity of citizenship exists among the parties, and the amount in controversy exceeds the minimum jurisdictional limits of this Court.

11. Venue is appropriate in the Northern District of California based on the fact that the actions and conduct that are the subject of this Complaint occurred in the City of Richmond, California, County of Contra Costa, which is located within the Northern District of California.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12. DEFENDANTS own and/or operate an approximately 340-acre complex in Richmond, California that provides permanent containment for non-hazardous and municipal wastes (the "WCCSL Facility"). The WCCSL facility consists of a closed and

COMPLAINT FOR DAMAGES

capped Class I Landfill; a closed Hazard Waste Management Facility; a Corrective Action Management Unit; a Leachate Treatment Plant; a closed Class II Municipal Solid Waste Landfill; a solid waste transfer station; an organic materials composting facility; and a Construction and Demolition processing operation.

13. The WCCSL facility is located adjacent to tidal wetlands, including the San Pablo Bay, San Pablo Creek, and a large lagoon south of the facility.

14. When the Class I and Class II landfills at WCCSL were closed and capped in 2005 (i.e., waste acceptance stopped), RSI entered into permit agreements with regulatory agencies - primarily the Department of Toxic Substance Control (DTSC) for the Class I landfill and the Regional Water Quality Control Board (RWQCB) for the Class II landfill - to establish environmental compliance requirements to be implemented during the 25 to 30-year post-closure period. The permit agreements are required when landfills close to establish site maintenance and environmental monitoring activities to be performed during post-closure to prevent impacts to the environment.

15. Compliance and maintenance activities related to the closed landfills were fully funded by the corporate closed sites group, i.e. RSI, through the company's corporate headquarters and active operations through the local area office in Walnut Creek. The foregoing arrangement resulted in conflicts between the closed sites and active operations at WCCSL due to disagreements regarding which entity had financial responsibility for different facility expenses.

16. In March 2019, the DEFENDANTS hired BAQUERIZO to serve as the Environmental Manager of the WCCSL facility. Most of the Environmental Managers employed by DEFENDANTS were significantly younger, and less experienced, than BAQUERIZO.

17. As Environmental Manager of WCCSL, BAQUERIZO was responsible for proposing compliance and engineering budgets on an annual basis for review and approval by corporate Closed Sites Manager. Once approved, BAQUERIZO was responsible for implementing improvements to facility systems and equipment within the

established budget limits and on schedule.

18. As WCCSL's Environmental Manager, BAQUERIZO was aware of the funding conflicts between RSI and the local area office since he was responsible for requesting necessary funds to implement compliance requirements.

19. The expenditures for closed sites are required to be included in post-closure budgets. Post-closure budgets are required by regulators, including the California Regional Water Quality Control Board (RWQCB) and the California Department of Toxic Substance Control (DTSC) to ensure that maintenance and compliance requirements (e.g., environmental monitoring) will be implemented throughout the 25-year post closure period for Class I and Class II landfills.

20. In June 2022, DEFENDANTS transferred the management of company closed landfill facilities (including WCCSL) from Walnut Creek, California to DEFENDANTS' corporate offices in Phoenix, Arizona.

21. After oversight was transferred to the Corporate office in Phoenix, the new Closed Sites Manager, DAVID HAMBLIN, ordered that spending related to the closed sites be reduced. This was the first time that such a demand had been made. After this demand was made, DEFENDANTS locked the Budget Model for WCCSL so new input to address 2023 environmental budget needs could not be introduced. It was not unlocked until December 2022, and showed drastically reduced funding available for engineering maintenance and environmental compliance.

22. ROB SHERMAN served as the Facility General Manager from BAQUERIZO's hire until August 2022, when he transferred to a facility in North Carolina. When SHERMAN transferred, there was no longer an onsite General Manager for the facility.

23. A new General Manager, KEN LEWIS was hired to oversee WCCSL in November, 2022.

24. Until LEWIS was hired, the General Manager of the facility was responsible for implementing and managing projects for the active operations, while

BAQUERIZO was responsible for implementing projects related to the closed landfills.

25.    However, when LEWIS was hired, he demanded that BAQUERIZO assume responsibility for all facility projects, including those related to the active operations.

26.    Throughout the calendar year of 2023, BAQUERIZO worked to implement all of the engineering maintenance and environmental compliance requirements. However, the reduced funding DEFENDANTS allotted for these projects was inadequate to address equipment failures and ensure compliance with all regulatory requirements, and cover the costs associated with the settlement of a case brought against WCCSL by the California Sportfishing Protection Alliance (CSPA).

27.    Specifically, a Consent Decree was entered in that case on October 6, 2021, which required WCCSL to maintain compliance with environmental regulations and ensuring their facility operates in a manner that minimizes pollution risks.  WCCSL was legally required to do so by, *inter alia*, ensuring the following duties were met:

a.  Compliance with the Clean Water Act: WCCSL is required to operate its facility in compliance with the Clean Water Act and the General Permit, implementing all necessary measures to meet these legal standards.

b.  Storm Water Best Management Practices (BMPs): WCCSL must implement specific storm water BMPs, including mandatory measures to prevent the spreading of pollutants and minimize erosion.

c.  Annual Clean-Up Requirements: WCCSL is obligated to perform annual clean-outs of specific areas, including swales and outfall locations, to prevent the accumulation of pollutants and debris.

d.  Storm Water Conveyance Repair: WCCSL must repair subsurface storm water conveyance systems in specific facility areas to prevent storm water from leaking and creating environmental hazards.

e.  Environmental Reporting and Monitoring: WCCSL must conduct environmental monitoring, including visual inspections, and report any

COMPLAINT FOR DAMAGES

discharges of pollutants. Additionally, they are required to share documents with regulatory agencies as needed.

28. Because DEFENDANTS refused to provide proper funding to meet all engineering maintenance and environmental compliance requirements, and over BAQUERIZO's objection, many compliance activities were not addressed, so that DEFENDANTS could save costs in the calendar year for 2023.

29. DEFENDANTS assured BAQUERIZO that the regulatory and compliance requirements would be performing in the coming year, but that proved to be untrue.

30. In March 2023, BAQUERIZO received a favorable evaluation for his 2022 job performance.

31. In July 2023, BAQUERIZO submitted a proposed 2024 compliance and engineering budget to DEFENDANTS for review. The budget that BAQUERIZO submitted was higher than the prior year's budget because DEFENDANTS deferred all the compliance and engineering work from 2023 to 2024. The budget BAQUERIZO submitted was reviewed but frozen (without communication to BAQUERIZO) by DEFENDANTS' Closed Sites Manager, DAVID HAMBLIN, at its corporate headquarters in Phoenix, Arizona.

32. In October 2023, a group of six managers from DEFENDANTS' corporate office visited WCCSL, including DAVID HAMBLIN (Closed Sites Manager), MICHAEL DARNELL (Senior Manager of Landfill Gas and Liquids), PAVAN PATTAMRAJU (Manager, Landfill Leachate), BEN ELKINS (Manager, Landfill Gas), ZACH VENABLE (Senior Manager), JOHN McEVOY (Closed Site Field Project Manager) and BEN WADE (Area Environmental Manager).

33. DEFENDANTS' unplanned two-day meeting focused on (1) addressing the disparity between inadequate post-closure budget funding and current compliance costs; (2) reviewing site systems established prior to my employment; and (3) discussing unbudgeted costs for regulatory permits and compliance oversight.

34. During the visit, DEFENDANTS' management team also explored options

for reducing costs associated with the leachate treatment plant, which had been installed around 2010 and is costly to operate. After this unplanned two day meeting, BAQUERIZO was left feeling defensive as each manager questioned different aspects of the facility and staff. The tone of the discussions was unprofessional, condescending, and disrespectful, making it one of the most stressful and offensive experiences of BAQUERIZO'S 40-year career.

35.    Beginning in November 2023, Closed Site Field Project Manager JOHN McEVOY and Area Environmental Manager BEN WADE made monthly two-day visits to WCCSL to review the various facility conditions and operations.  BAQUERIZO met with them both at each of these monthly visits, and during these visits raised serious compliance issues to DEFENDANTS.

36.    Specifically, BAQUERIZO raised the fact that serious compliance issues, including those outlined in the Consent Decree filed October 6, 2021, were not being performed because DEFENDANTS would not approve the costs required to ensure compliance.  BAQUERIZO repeatedly requested the funding needed for these and other compliance requirements.

37.    However, when BAQUERIZO did so, both McEVOY and WADE told BAQUERIZO that "we must manage the risk of non-compliance" due to funding limitations.

38.    BAQUERIZO was appalled to hear this, and to know that DEFENDANTS were willfully refusing to ensure compliance required by the Consent Decree and by state and federal environmental laws, solely to cut costs.  Regrettably, this sentiment persisted through the rest of BAQUERIZO's employment.

39.    In December 2023, BAQUERIZO worked with WADE to develop a budget within the drastically reduced funding available for engineering maintenance and environmental compliance.

40.    However, one month later, in January 2024, BAQUERIZO was informed by DEFENDANTS that the already reduced budget would be *further* reduced by

approximately twenty percent. The funding reduction was not targeted at specific activities that were deemed unnecessary; it was completely arbitrary, and was not made with any concern for DEFENDANTS' legal obligations.

41. BAQUERIZO objected to this budget, and informed DEFENDANTS they would be noncompliant with the Consent Decree and with other federal and state laws if they did not fund the necessary engineering maintenance and environmental compliance required at the site.

42. DEFENDANTS refused to change the budget, and instead began retaliating against BAQUERIZO for objecting to DEFENDANTS' willful non-compliance with state and federal statutes, rules, and regulations, as well as its willful violation of the Consent Decree, which constitutes Court Order.

43. On March 4, 2024, DEFENDANTS issued BAQUERIZO a performance evaluation. For the fist time in his five year employment, BAQUERIZO was rated as "Needs Improvement." In the review, DEFENDANTS identified four items as needing improvement, however prior to this review, none of thee four tasks were ever the responsibility of the Environmental Manager. DEFENDANTS then listed BAQUERIZO's status as "Needs Improvement" in Workday, and refused any annual compensation adjustment, even for cost of living.

44. On March 5, 2024, DEFENDANTS placed BAQUERIZO on a 60-day Performance Improvement Plan ("PIP"). The PIP was issued by WADE in the presence of LEWIS, the General Manager of the facility.

45. On March 8, 2024, BAQUERIZO sent an email to DEFENDANTS' Human Resources Representative LISA MARTINEZ-RONAN and requested that a complaint be formally filed as to the Performance Review issued to BAQUERIZO by WADE. Specifically, BAQUERIZO complained that WADE's conduct had created a hostile work environment.

46. MARTINEZ-RONAN acknowledged receipt of this complaint on March 11, 2024, and confirmed she forwarded it to Area Director of Human Resources

CHRISTINE PETERSON. BAQUERIZO then also sent his complaint directly to PETERSON.

47. BAQUERIZO had a Microsoft Teams meeting with PETERSON and JEFF COX on March 22, 2024. During this meeting, BAQUERIZO relayed that he felt his "Needs Improvement" Performance Review was issued in retaliation for his raising the fact that DEFENDANTS were not complying with state and federal laws, rules, regulations, or the Consent Decree.

48. Neither COX nor PETERSON had any first-hand knowledge of BAQUERIZO's work performance. Despite this, they both stated that they were not willing to change BAQUERIZO'S review.

49. On March 28, 2024, BAQUERIZO sent PETERSON an email stating he still wished to file a formal hostile work environment complaint, and wanted confirmation that his complaint was received and logged into BAQUERIZO's employee record.

50. The same day, PETERSON responded to BAQUERIZO, and promised to set up a follow up call to discuss BAQUERIZO's hostile work environment complaint. However, PETERSON did not set up a meeting, and no further communication was received from PETERSON for over a month.

51. On April 4, 2024, halfway through the PIP process, DEFENDANTS provided BAQUERIZO with a 30-day performance review, which was generally favorable, and documented all of the items listed on the PIP that BAQUERIZO had done to date.

52. On April 29, 2024, PETERSON finally responded to BAQUERIZO's March 28, 2024 email, and offered to set up a Microsoft Teams meeting to discuss his complaint. BAQUERIZO responded that he felt his original complaint was not taken seriously, especially given that so much time had passed since BAQUERIZO's complaint was made.

53. On May 15, 2024, DEFENDANTS terminated BAQUERIZO's

10

COMPLAINT FOR DAMAGES

employment.

54.    DEFENDANTS claimed that BAQUERIZO was terminated for performance reasons. BAQUERIZO is informed and believes and thereon alleges that this is not true, and constitutes pretext for the real – and unlawful – reason for termination.

55.    BAQUERIZO is informed and believes and thereon alleges that his employment was terminated in retaliation for engaging in protected activities under both federal and state laws.

### FIRST CAUSE OF ACTION
### Retaliation in Violation of Labor Code § 1102.5
### (Against All DEFENDANTS)

56.    BAQUERIZO incorporates by reference and realleges all preceding paragraphs as though fully set forth herein.

57.    BAQUERIZO had a good faith reasonable belief DEFENDANTS' acts or omissions violated government statutes or regulations. BAQUERIZO reported such apparent violations to DEFENDANTS and/or refused to participate in DEFENDANTS' acts or omissions that would result in an apparent violation of, or noncompliance with, state or federal laws or regulations; and/or BAQUERIZO reported DEFENDANTS' apparent statutory or regulatory violations to a person with a duty to make such a report (mandatory reporter), before BAQUERIZO was terminated, including but not limited to his direct supervisors.

58.    DEFENDANTS subjected BAQUERIZO to adverse employment actions in retaliation for BAQUERIZO'S protected activities, in violation of Labor Code § 1102.5.

59.    The protected activity of BAQUERIZO was a contributing factor for the adverse employment decisions and actions by DEFENDANTS against BAQUERIZO.

60.    As a direct and proximate result of the foregoing conduct, BAQUERIZO has been harmed in that he has suffered humiliation, mental anguish, outrage, emotional and physical distress, and has been injured in mind and body in that he also suffered severe trauma to his nervous system, loss of sleep, and problems with concentration. As

11

a result of such conduct, BAQUERIZO has suffered damages in an amount according to proof.

61.    DEFENDANTS' wrongful conduct proximately caused BAQUERIZO to suffer general, special and statutory damages in an amount to be proven, and $10,000 per violation under Labor Code § 1102.5.

62.    As a further direct and proximate result of the foregoing conduct, BAQUERIZO has been injured in that BAQUERIZO has incurred attorneys' fees and costs.

63.    BAQUERIZO is entitled to injunctive relief including reinstatement and back pay and promotion without discrimination or retaliation.

64.    DEFENDANTS' wrongful conduct as alleged herein was a substantial factor in causing BAQUERIZO'S harm.

65.    DEFENDANTS acted with malice, oppression and fraud and in reckless disregard of BAQUERIZO'S rights in engaging in the aforementioned conduct in they acted with the intent to cause BAQUERIZO emotional distress, or with reckless disregard of the probability of causing BAQUERIZO emotional distress.

66.    DEFENDANTS through their managing agents, officers and directors authorized and ratified the conduct directed at BAQUERIZO.  DEFENDANTS' conduct warrants the assessment of punitive damages in an amount sufficient to punish DEFENDANTS and to deter others from engaging in similar misconduct.

**SECOND CAUSE OF ACTION**
**Unfair Business Practices**
**In Violation of California Business & Professions Code §17200**
**(Against All DEFENDANTS)**

67.    BAQUERIZO incorporates by reference and realleges all preceding paragraphs as though fully set forth herein.

68.    California Business and Professions Code § 17200 prohibits businesses from engaging in any unlawful, unfair and fraudulent conduct.

69.    The following acts by DEFENDANTS, which are more fully set forth

COMPLAINT FOR DAMAGES

above, constitute unlawful and/or unfair business practices prohibited by Business and Professions Code § 17200: retaliation for reporting and/or complaining about unlawful practices, including the DEFENDANTS' failure to comply with environmental regulatory requirements and permit agreements.

70.     BAQUERIZO is a "person" within the meaning of Business and Professions Code § 17204 who has suffered injury in fact and lost money as a result of DEFENDANTS' unfair business practices and therefore has standing to bring this claim for restitution and other appropriate equitable relief.

71.     As a result of their unlawful, fraudulent and/or unfair acts, DEFENDANTS have reaped and continue to reap the unfair benefits and illegal profits at the expense of BAQUERIZO. DEFENDANTS should be enjoined from this activity and made to restore to BAQUERIZO any and all wrongfully withheld wages, interest thereon, and related statutory penalties, pursuant to Business and Professions Code §§ 17202 and 17203 and attorneys' fees pursuant to California Civil Procedure Code § 1021.5.

72.     WHEREFORE, BAQUERIZO prays judgment against DEFENDANTS, and each of them, as hereafter set forth.

<u>**THIRD CAUSE OF ACTION**</u>
**Wrongful Termination**
**In Violation of Public Policy**
**(Against All DEFENDANTS)**

73.     BAQUERIZO incorporates by reference and realleges all preceding paragraphs as though fully set forth herein.

74.     The public policy of California prohibits retaliation, termination and acts against an employee for engaging in protected activity and complaining of unlawful conduct, including unlawful practices. Said public policy is expressed in the California Constitution, art. I, § 8, the Civil Code, Labor Code §§ 1102.5, *et seq.*, and elsewhere.

75.     Over the course of BAQUERIZO'S employment with DEFENDANTS, BAQUERIZO was subjected to acts of retaliation for reporting and/or opposing DEFENDANTS' business practices, including their failure and/or refusal to comply with environmental regulatory requirements and permit agreements. DEFENDANTS' acts in

this regard culminated in the termination of BAQUERIZO'S job in or about May 2024.

76. DEFENDANTS' termination of BAQUERIZO'S employment violates California Labor Code § 1102.5 and the Business and Professions Code, including section 17200, all of which prohibit the retaliation against persons who report unlawful conduct to their employer. Said public policies affect the public at large. As a direct and proximate result of DEFENDANTS' termination of BAQUERIZO, BAQUERIZO suffered injury, damage, loss and harm in an amount according to proof at trial and within the jurisdiction of this Court.

77. As a direct and proximate result of the foregoing conduct, BAQUERIZO has been injured in that BAQUERIZO has suffered the loss of the wages, salary, benefits and additional amounts of money BAQUERIZO would have recovered had DEFENDANTS not terminated BAQUERIZO'S employment. As a result of such conduct, BAQUERIZO has suffered damages in an amount according to proof.

78. As a further direct and proximate result of the foregoing conduct, BAQUERIZO has been injured in that BAQUERIZO has incurred attorneys' fees and costs.

79. As a further direct and proximate result of the foregoing conduct, BAQUERIZO has been injured in that BAQUERIZO has suffered the loss of employment-related experience and opportunities from which he was terminated in an amount according to proof.

80. As a further direct and proximate result of the foregoing conduct, BAQUERIZO has been harmed in that BAQUERIZO has suffered humiliation, mental anguish, outrage, emotional and physical distress, and has been injured in mind and body, in that he also suffered severe trauma to his nervous system, loss of sleep, and problems with concentration. As a result of such conduct, BAQUERIZO has suffered damages in an amount according to proof.

81. DEFENDANTS acted with malice, oppression and fraud, and in reckless disregard of BAQUERIZO'S rights under Labor Code § 1102.5 and Business and

Professions Code §§ 17200, et seq. in that DEFENDANTS retaliated against BAQUERIZO, and/or knew of the retaliation to which BAQUERIZO was subjected and failed to take immediate and appropriate corrective action to stop the retaliation. DEFENDANTS, through their managing agents, officers, and/or directors authorized and ratified the retaliation to which BAQUERIZO was subjected. The conduct of DEFENDANTS warrants the assessment of punitive damages in an amount sufficient to punish DEFENDANTS and to deter others from engaging in similar misconduct.

## **PRAYER**

WHEREFORE, BAQUERIZO prays judgment against all DEFENDANTS, and each of them, as follows:

1. For general damages in an amount according to proof at trial;

2. For reasonable attorney's fees as allowed by law, including Civil Procedure Code § 1021.5 and Labor Code § 1102.5 in an amount according to proof;

3. For restitution in an amount according to proof;

4. For special damages in amounts according to proof;

5. For specific performance of the obligation to provide employment;

6. For reinstatement of BAQUERIZO's employment;

7. For injunctive relief as provided by law, including, but not limited, to issuing an Order compelling DEFENDANTS to comply with all state and federal laws, rules and regulations regarding Closed Sites, and the Consent Decree entered on October 6, 2021, and to provide satisfactory proof to this Court of the same;

8. For declaratory relief as provided by law, including but not limited to a declaration that DEFENDANTS violated California Labor Code § 1102.5, and also that DEFENDANTS violated the October 6, 2021 Consent Decree;

9. For interest as provided by law;

10. For costs of suit and expert fees pursuant to applicable statutes;

11. For punitive and exemplary damages for any despicable conduct constituting fraud, malice and/or oppression as those terms are defined in California Civil

COMPLAINT FOR DAMAGES

Code § 3294; and

12.   For such other and further relief as the Court deems just and proper.

Dated: November 5, 2024

Respectfully Submitted,
**WORKPLACE ADVOCATES**

/s/ Barbara E. Cowan
By:   Barbara E. Cowan, Esq.
Attorneys for Plaintiff EDWARD BAQUERIZO

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 5, 2024

Respectfully Submitted,
**WORKPLACE ADVOCATES**

/s/ Barbara E. Cowan
By:   Barbara E. Cowan, Esq.
Attorneys for Plaintiff EDWARD BAQUERIZO

COMPLAINT FOR DAMAGES